**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT BATES, | ) | Case No. 1:25-CV-1115-SL |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| WARDEN MICHAEL SWARTZ, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Robert Bates ("Mr. Bates"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Bates is serving a sentence of eight years in prison after pleading guilty to multiple counts of aggravated robbery in two separate cases.

Mr. Bates asserts three grounds for relief. Respondent, Warden Michael Swartz ("Warden"), filed an answer/return of writ on November 25, 2025. (ECF No. 10). Mr. Bates filed a traverse on December 23, 2025. (ECF No. 11). The Warden filed a sur-reply to Mr. Bates' traverse on January 7, 2026. (ECF No. 13). Mr. Bates has also filed several additional motions, including a motion for judicial notice, a motion for discovery, and a motion to expand the record. (ECF Nos. 8, 9, 16).

This matter was referred to me on August 11, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Bates' petition. (*See* ECF non-document entry dated August 11, 2025). For the reasons set forth below, I recommend that Mr. Bates' petition be DISMISSED and/or DENIED. I also recommend that the Court not grant Mr. Bates a certificate of appealability. Additionally, Mr. Bates' motion for discovery and his motion to

1

expand the record are DENIED, while his motion for judicial notice is GRANTED.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth Appellate District summarized the facts as follows:

### Trial Court's Imposition of Postrelease Control in Prior Case in 2008

{¶ 3} In October 2008, Bates was sentenced to an aggregate nine-year prison term in Cuyahoga C.P. No. CR-07-501710-A ("501710") following guilty verdicts on one count of kidnapping with a sexual motivation specification, four counts of rape and two counts of robbery. At the sentencing hearing (the "2008 sentencing hearing"), the trial court allegedly failed to advise Bates of the consequences of violating postrelease control. *See State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610, ¶ 2, 18. In its sentencing entry, the trial court imposed five years of postrelease control but failed to include a statement that postrelease control was mandatory and that a violation of postrelease control would subject Bates to the consequences set forth in R.C. 2967.28 (the "2008 sentencing entry"). *See id*. at ¶ 1-2. Bates filed a direct appeal challenging his convictions but neither he nor the State challenged the postrelease control portion of his sentence on appeal. *State v. Bates*, 2009-Ohio-5819, 2009 WL 3647050 (8th Dist.). This court affirmed Bates' convictions. *Id*. at ¶ 1. The Ohio Supreme Court declined discretionary review. *State v. Bates*, 2020 -Ohio- 267, 2020 WL 479390, ¶ 1, 10.

{¶ 4} Nearly ten years later, the State brought the error of the trial court's postrelease control notification to the trial court's attention. In October 2018, the trial court held a classification hearing on Bates' sexual-predator status (the "2018 hearing"). At the hearing, the prosecutor raised an issue concerning the trial court's 2008 imposition of postrelease control. *Bates*, 2022-Ohio-475, 190 N.E.3d 610, ¶ 4. The prosecutor explained that he had reviewed the 2008 sentencing entry and discovered that the trial court had failed to include notification of the mandatory nature of postrelease control and the consequences of violating postrelease control in that entry. Over Bates' objection, the trial court proceeded to advise Bates of his postrelease control obligations and the consequences of violating postrelease control. *Id*. The trial court then issued a new sentencing entry that included the required notifications (the "2018

sentencing entry"). *See Bates*, 2022-Ohio-475, 190 N.E.3d 610, at ¶ 1, 5. Bates appealed, challenging the postrelease control portion of the 2018 sentencing entry. *State v. Bates*, 2020-Ohio-267, 2020 WL 479390, ¶ 1, 10.

{¶ 5} Relying on the Ohio Supreme Court's prior void-sentence jurisprudence, this court affirmed. It concluded that the 2008 sentencing entry was "not sufficient to validly impose postrelease control" and that the postrelease control portion of Bates' sentence as imposed in 2008 was, therefore, void, but because Bates had not yet served his entire prison sentence, the trial court was permitted to correct the previously defective postrelease control sanction by properly notifying Bates of postrelease control at the 2018 hearing and issuing a new sentencing entry. *Id*. at ¶ 20-26. Bates appealed to the Ohio Supreme Court. The Ohio Supreme Court accepted Bates' discretionary appeal. *State v. Bates*, 2020-Ohio-1090, 141 N.E.3d 976.

{¶ 6} Citing its decisions in *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, the Court held that "[a]n attack on a trial court's imposition of postrelease control in a sentence must be brought on direct appeal or it will be barred by res judicata," *State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610, ¶ 32, citing *Harper* at ¶ 42, and *Hudson* at ¶ 17, and that "[t]his holding applies to the state as well as the defendant," *Bates* at ¶ 32, citing *Harper* at ¶ 43, and *Hudson* at ¶ 18. "Because res judicata precluded the collateral attack on Bates's sentence," the Court held that the trial court's 2018 sentencing entry was "improper and, therefore, of no effect." *Bates* at ¶ 32. The Court reversed the Eighth District "to the extent it [held] otherwise" and vacated "the portion of the 2018 sentencing entry imposing postrelease control on Bates." *Id*.

**Bates' Guilty Pleas in CR 637833**

{¶ 7} On March 15, 2019, a Cuyahoga County Grand Jury indicted Bates on two counts of aggravated robbery with one- and three-year firearm specifications and notice of prior conviction and repeat violent offender specifications, two counts of theft and one count of having weapons while under disability. The charges related to incidents on or about January 15, 2019 and January 17, 2019. Bates initially pled not guilty to all charges.

{¶ 8} The parties thereafter reached a plea agreement. On July 31, 2019, Bates pled guilty to an amended count of aggravated robbery with a one-year firearm specification (amended Count 1) and an amended count of aggravated robbery with a three-year firearm specification (amended Count 3). The parties further agreed to a recommended sentencing range of eight to ten years. In exchange for Bates' guilty pleas, the remaining counts were nolled.

(ECF No. 10-1, Exhibit 32); *State v. Bates*, No. 113620, 250 N.E.3d 849, 2024-Ohio-3309 (8th Dist. Aug. 29, 2024).

## III.  PROCEDURAL HISTORY

### A.  State Court Guilty Plea

#### 1.  Case Number 636835-19-CR

On February 6, 2019, Mr. Bates was indicted in the Cuyahoga County Court of Common Pleas in case number 636835-19-CR on: (1) one first-degree felony count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1); (2) one first-degree misdemeanor count of theft in violation of O.R.C. § 2913.02(A)(1); (3) one third-degree felony count of abduction in violation of O.R.C. § 2905.02(A)(2); and (4) one third-degree felony count of having weapons under disability in violation of O.R.C. § 2923.13(A)(2). (ECF No. 10-1, Exhibit 1). The aggravated robbery, abduction, and having weapons under disability counts also carried one- and three-year firearm specifications, while the aggravated robbery count further carried repeat violent offender specifications. *Id*. On February 11, 2019, Mr. Bates pled not guilty to all charges. (ECF No. 10-1, Exhibit 2).

On July 31, 2019, Mr. Bates withdrew his plea of not guilty and pled guilty to one count of aggravated robbery with a one-year firearm specification. (ECF No. 10-1, Exhibit 3). The remaining counts were nolled, and the remaining specifications were deleted. *Id*. On September 30, 2019, the trial court sentenced Mr. Bates to an aggregate term of four years in prison. (ECF No. 10-1, Exhibit 4). The Court also ordered that Mr. Bates would serve the firearm specification concurrently to the firearm specification in case number 637833-19-CR (discussed below), but that he would serve the sentence for the base offense concurrently with the sentence for the base offense in that case. *Id*. Mr. Bates did not file a direct appeal from the trial court's sentencing order at that time.

#### 2.  Case Number 637833-19-CR

On March 15, 2019, Mr. Bates was indicted in the Cuyahoga County Court of

4

Common Pleas in case number 637833-19-CR on: (1) two first-degree felony counts of aggravated robbery in violation of O.R.C. § 2911.01(A)(1); (2) two first-degree misdemeanor counts of theft in violation of O.R.C. § 2913.02(A)(1); and (3) one third-degree felony count of having weapons under disability in violation of O.R.C. § 2923.13(A)(2). (ECF No. 10-1, Exhibit 5). The aggravated robbery counts also carried one- and three-year firearm specifications and repeat violent offender specifications. *Id*. On March 20, 2019, Mr. Bates pled not guilty to all charges. (ECF No. 10-1, Exhibit 6).

On July 31, 2019, Mr. Bates withdrew his plea of not guilty and pled guilty to two counts of aggravated robbery with firearm specifications and repeat violent offender specifications. (ECF No. 10-1, Exhibit 7). The remaining counts were nolled. *Id*. On September 30, 2019, the trial court sentenced Mr. Bates to an aggregate term of seven years in prison. (ECF No. 10-1, Exhibit 8). On the same date, the trial court amended the plea entry to reflect that the repeat violent offender specifications were deleted as part of the plea. (ECF No. 10-1, Exhibit 9). Mr. Bates did not appeal from the trial court's sentencing order at that time.

**B.**  **Petition to Vacate or Set Aside Judgment of Conviction**

On August 9, 2022, Mr. Bates, acting *pro se*, filed a petition in both cases to vacate or set aside his judgment of conviction pursuant to O.R.C. § 2953.21. (ECF No. 10). In his petition, Mr. Bates argued that his Fourth Amendment rights were violated because the State conducted an illegal search of his residence. Specifically, Mr. Bates noted that the police relied on his post-release control restrictions from his prior 2008 conviction to conduct a warrantless search. However, he argued that he was not validly on post-release control at the time of the search because the trial court's 2008 sentencing entry imposing post-release control was defective and void. Mr. Bates also argued that he was denied his Sixth

5

Amendment right to effective trial counsel because his counsel failed to challenge the constitutionality of the search. Finally, Mr. Bates argued that his Fifth Amendment due process rights were violated as a result of the State's illegal search and his counsel's ineffectiveness. On October 18, 2022, Mr. Bates filed a motion to vacate his sentence and conviction, in which he argued that the indictment was defective. (ECF No. 10-1, Exhibit 13).

On January 25, 2023, the trial court denied both motions without comment. (ECF No. 10-1, Exhibits 16-19). Mr. Bates did not file an appeal of either ruling.

**C.  Motion to Withdraw Guilty Plea**

On May 12, 2023, Mr. Bates, acting *pro se*, filed a motion to withdraw his guilty plea in both cases pursuant to Ohio Crim.R. 32.1. (ECF No. 10-1, Exhibit 20). On January 10, 2024, the trial court denied Mr. Bates' motion without comment. (ECF No. 10-1, Exhibits 26-27). Mr. Bates timely appealed to the Eighth Appellate District in case number 637833-19-CR. (ECF No. 10-1, Exhibit 28). In his appellate brief, Mr. Bates raised the following assignments of error:

1.  Appellant was denied due process and fundamental fairness when the trial court abused its discretion by denying the motion to withdraw guilty plea related to the ineffective assistance of counsel resulting in a manifest injustice.

2.  Appellant was denied due process and suffered prejudice when the trial court denied the motion to withdraw guilty plea when the charges were based on evidence that was obtained in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution, which illegality was not discovered until after the plea had been made, resulting in a manifest injustice.

(ECF No. 10-1, Exhibit 29).

On August 29, 2024, the Eighth Appellate District affirmed. (ECF No. 10-1, Exhibit 32). Mr. Bates did not file an appeal from the Eighth Appellate District's decision to the Ohio Supreme Court.

**D.  Motions for Judicial Release**

On September 26, 2024, Mr. Bates, acting *pro se*, filed a motion in the trial court in both cases for judicial release pursuant to O.R.C. § 2929.20. (ECF No. 10-1, Exhibit 33). On November 4, 2024, the trial court held that Mr. Bates was ineligible for judicial release because he had not yet served the minimum time on his sentence. (ECF No. 10-1, Exhibits 36-37). Mr. Bates timely appealed, arguing that the trial court erred in failing to apply jail time credits to the calculation of his prison term and by failing to hold a hearing on Mr. Bates' motion. (ECF No. 10-1, Exhibit 38). On December 20, 2024, the Eighth Appellate District dismissed Mr. Bates' appeal for failure to file a praecipe. (ECF No. 10-1, Exhibit 39).

On November 25, 2024, Mr. Bates filed a motion in the trial court for reconsideration of the court's prior order denying his motion for judicial release. (ECF No. 10-1, Exhibit 40). It does not appear that the trial court ruled on Mr. Bates' motion.

On January 13, 2025, Mr. Bates filed a second motion for judicial release in both cases. (ECF No. 10-1, Exhibit 52). On January 30, 2025, the trial court denied Mr. Bates' motion. (ECF No. 10-1, Exhibits 54-55). Mr. Bates, through counsel, filed another motion for judicial release in both cases on July 29, 2025. (ECF No. 10-1, Exhibit 58). On September 23, 2025, the trial court denied Mr. Bates' motion. (ECF No. 10-1, Exhibits 62-63).

**E.  Motion for Leave to File Delayed Appeal**

On October 10, 2024, Mr. Bates, acting *pro se*, filed a motion in the Eighth Appellate District for leave to take a delayed direct appeal of the trial court's 2019 sentencing entry in both cases pursuant to Ohio Rule of Appellate Procedure 5(A)(2). (ECF No. 10-1, Exhibit 41). On October 29, 2024, the Eighth Appellate District denied Mr. Bates' motion and dismissed the appeal. (ECF No. 10-1, Exhibit 46). Mr. Bates filed a motion for reconsideration, which the Eighth Appellate District denied as untimely. (ECF No. 10-1,

Exhibits 47-48).

Mr. Bates filed a timely appeal to the Ohio Supreme Court. (ECF No. 10-1, Exhibit 49). In his memorandum in support of jurisdiction, Mr. Bates raised the following propositions of law:

1. The court of appeals abused its discretion when it denied appellant's delayed appeal pursuant to App. R. 5(A)(2) and appointment of counsel causing him prejudice.

2. Ohio Rev. Code Section 2050.03(A)(2) mandates that a trial court provide the notice of duty to register as a sex offender to a defendant at the time of sentencing.

3. The trial court is divested of jurisdiction over a case after the final judgment entry is journalized by the clerk of courts.

4. A sexual offender classification hearing is a proceeding within the context of the criminal case and, therefore, subject to the rules of criminal procedure and mandated deadlines therein.

5. The trial court violated the appellant's constitutional rights when it re-opened the case and held further hearings after final judgment entry was journalized.

6. The appellant was denied effective assistance of counsel, the charges in Case Nos. CR-19-637833-A; and CR-19-636535-B were based on evidence that was obtained via warrantless search and seizure, a direct result of the trial court's illegal act of imposing PRC on appellant October 4, 2018 in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

(ECF No. 10-1, Exhibit 50). On February 18, 2025, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 10-1, Exhibit 51).

**F.  Federal Habeas Action**

On or about May 13, 2025, Mr. Bates, acting *pro se*, filed his 28 U.S.C. § 2254 habeas

8

petition. (ECF No. 1).[1] Mr. Bates' habeas petition appears to raise the following grounds for

relief:[2]

1. Petitioner is entitled to a writ of Habeas Corpus because the judgment of conviction and sentence is void due to lack of jurisdiction and Fourth and Fourteenth Amendment violations.

2. [I]n the current case Petitioner is serving Case Nos. CR-19- 637833-A and, CR-19-636835-B. the indictments stemmed from evidence obtained from a "warrantless search" of Petitioner's residence authorized by Parole officer Eschman. A direct result of the trial court's illegally imposing PRC on Petitioner ten (10) years after he completed his nine (9) year journalized prison sentence imposed in 2008, had been completed in its entirety.

3. On multiple instances throughout the court proceedings Petitioner was denied effective assistance of counsel. Court appointed counsel failed to investigate Petitioner's case and failed to bring all of the facts of the case to the attention of the Court. Thus, violating the Sixth Amendment of the U.S. Constitution.

*Id*. The Warden filed an answer/return of writ on November 25, 2025. (ECF No. 10).

Mr. Bates filed a traverse on December 23, 2025. (ECF No. 11). The Warden filed a sur-reply

to Mr. Bates' traverse on January 7, 2026. (ECF No. 13).[3]

On November 6, 2025, Mr. Bates filed a motion asking the Court to take judicial

notice of certain documents and facts from the state court proceedings pursuant to Federal

Rule of Evidence 201. (ECF No. 8). On November 17, 2025, Mr. Bates filed a motion for

---

[1] Under the "mailbox" rule, a habeas petition is deemed filed when the prisoner presents the petition to prison officials for filing. *See Keeling v. Warden, Lebanon Corr. Inst*., 673 F. 3d 452, 456 (6th Cir. 2012). Mr. Bates did not use the official habeas form in preparing his petition and does not certify in his petition when he presented it to prison officials for mailing. The envelope accompanying the petition is postmarked May 13, 2025. (ECF No. 1-6). As discussed below, the precise date on which Mr. Bates filed his petition is not material to the statute of limitations inquiry. I will therefore assume that he filed the petition on or about May 13, 2025.

[2] Mr. Bates did not use the official § 2254 habeas form and did not divide his petition into clearly demarcated claims. In the return of writ, the Warden characterized Mr. Bates as asserting these three claims. In his traverse, Mr. Bates focuses on his argument that he received the ineffective assistance of counsel, but does not dispute the Warden's characterization of his claims. In an abundance of caution, I will also assume that Mr. Bates is seeking to assert claims that the warrantless search of his residence violated his Fourth and Fourteenth Amendment rights.

[3] Mr. Bates moved to strike the Warden's sur-reply, arguing that the Warden filed it without leave of court. (ECF No. 14). As the Warden correctly notes, however, my Initial Order expressly authorized the Warden to file a sur-reply to Mr. Bates' traverse within 15 days. (ECF No. 4). Mr. Bates' motion to strike is DENIED.

leave to take discovery. (ECF No. 9). On February 24, 2026, Mr. Bates filed a motion to expand the record. (ECF No. 16).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Bates, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Bates' § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers

10

only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015)

11

(quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead,

"federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).

### D. <u>AEDPA Standard of Review</u>

28 U.S.C. § 2254, as amended by AEDPA, provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v.*

13

*Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority

14

to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. <u>Statute of Limitations</u>

The Warden first argues that the Court should dismiss Mr. Bates' petition as time-barred because Mr. Bates did not file it within the applicable one-year statute of limitations and because no form of tolling applies to save his claims. I agree.

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

15

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007).

The Warden notes that the trial court entered its sentencing orders on September 30, 2019. (ECF No. 10-1, Exhibits 4, 8). The Warden also notes that, under Ohio Appellate Rule of Procedure 4(A)(1), Mr. Bates had 30 days from that date, or until October 30, 2019, to file an appeal to the Eighth Appellate District. *See* Ohio R. App. P. 4(A)(1). Mr. Bates did not file an appeal, and the Warden argues that the statute of limitations began running the next day and expired one year later, on October 30, 2020. Because Mr. Bates did not file his petition until approximately May 13, 2025 (ECF No. 1), the Warden argues that Mr. Bates' petition is untimely unless some form of tolling applies.

The Warden's argument assumes that the AEDPA statute of limitations clock began running when the trial court's sentencing orders became final. In his traverse, however, Mr. Bates argues that he has been diligent in bringing his claims to the court's attention "once he was made aware by the Supreme Court of Ohio . . . that his rights had been violated." (ECF No. 11, PageID # 492). While that statement arguably relates to Mr. Bates' procedural default argument, I will construe his *pro se* brief liberally and, in an abundance of caution, will assume that he is arguing his petition is timely under § 2244(d)(1)(D) because the Ohio Supreme Court's decision is the factual predicate for his claims.[4]

---

[4] If the statute of limitations did not begin to run until the Ohio Supreme Court issued its decision, the petition is likely timely. After the Ohio Supreme Court's decision, Mr. Bates filed several state court postconviction petitions, including a petition to vacate his sentence, a motion for leave to withdraw his guilty plea, and a motion for a delayed appeal. (ECF No. 10-1, Exhibits 10, 20, 41). Under § 2244(d)(2), the one-year limitation period "is tolled" while a properly filed state postconviction petition is pending. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459 (6th Cir. 2012). Applying statutory tolling, approximately 331 days would have elapsed between the Ohio Supreme Court's decision and the date on which Mr. Bates filed his petition.

16

In determining the triggering date under § 2244(d)(1)(D), a court looks at "'when a duly diligent person in petitioner's circumstances would have discovered' the factual predicate for his claim." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) (quoting *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). "[T]he due-diligence standard in § 2244(d)(1)(D) 'does not require maximum feasible diligence, only 'due,' or reasonable diligence.'" *Rucker v. Genovese*, 834 F. App'x 126, 127 (6th Cir. 2020) (quoting *DiCenzi*, 452 F.3d at 470). The petitioner bears the burden of establishing that he has exercised due diligence. *See Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002).

A state court decision in the petitioner's own case can constitute the factual predicate for a petitioner's claim in certain circumstances. In *Johnson v. United States*, 544 U.S. 295 (2005), the Supreme Court held that an order vacating a state court conviction was a factual predicate under § 2255(f)—the analogous provision to § 2244(d) for prisoners challenging federal convictions—for a prisoner's collateral attack on a federal sentence on the basis that the now-vacated state conviction had been used to enhance the sentence. *Id.* 306-07 (noting that courts "commonly speak of the 'fact of a prior conviction'" and concluding that "an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order entering it") (citation omitted). Lower courts have reached the same conclusion with respect to § 2244(d)(1)(D). *See Houston v. Coleman*, No. 3:16 CV 3043, 2017 WL 4174799, at *4 (N.D. Ohio Aug. 8, 2017) (noting that a state court decision may constitute a factual predicate, but only when the decision is issued in the petitioner's own case) (citing cases), *report and recommendation adopted*, 2017 WL 4158882 (N.D. Ohio Sept. 19, 2017).

Here, Mr. Bates' claims are premised on the notion that the police conducted an unlawful, warrantless search of his residence pursuant to post-release control restrictions that

17

the trial court did not validly impose. As discussed below, Mr. Bates is incorrect when he asserts that the Ohio Supreme Court declared the post-release control restrictions unconstitutional. Nonetheless, it is true that the Ohio Supreme Court's order voided the trial court's 2018 sentencing entry while leaving open the question of whether he was ever properly subject to post-release control under the original 2008 sentencing entry. *See State v. Bates*, 167 Ohio St. 3d 197, 205, 190 N.E.3d 610, 617 (2022) (noting that there was "no dispute that the trial court's imposition of postrelease control in 2008 was improper" but declining to "reach the effect of the trial court's improper 2008 imposition of postrelease control").

Mr. Bates' apparent argument that the Ohio Supreme Court's decision constituted a factual predicate of his habeas claims is not without some logic. Before the Ohio Supreme Court's decision, Mr. Bates was purportedly subject to post-release control, either under the original sentencing entry or the 2018 resentencing entry. After the Ohio Supreme Court's decision, however, the 2018 resentencing entry was void, while Mr. Bates' post-release control under the original 2008 sentencing entry and the validity of the search of his residence were potentially in doubt. (*See* ECF No. 10-1, Exhibit 32, ¶ 45) (noting that it was "not at all clear from a reading of [the Ohio Supreme Court's] *Bates* [decision] what effect its holding had on the validity of the [parole authority's] postrelease control supervision of Bates . . . and any related search of his residence").

I need not decide whether the Ohio Supreme Court's decision constituted the factual predicate for Mr. Bates' claims, however, as Mr. Bates has not shown that he acted diligently in seeking a ruling on the validity of his post-release control restrictions. "By its terms, section 2244(d)(1)(D) 'requires diligence.'" *Shorter v. Richard*, 659 F. App'x 227, 230 (6th Cir.

2016) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)). In *Johnson*, the Supreme Court held that similar language in § 2255(f) is "an explicit demand of the text" that a court cannot "read out of the statute . . . ." 544 U.S. at 309-10. In *Shorter*, the Sixth Circuit applied that rule to claims under § 2244(d)(1)(D) as well, holding that the petitioner could not rely on a state court order denying his motion for leave to take a delayed appeal as the factual predicate for statute of limitations purposes because the petitioner did not act with diligence in pursuing the appeal. 659 F. App'x at 232.[5]

Mr. Bates has not shown that he acted with due diligence here. The trial court entered its original sentencing order containing the defective post-release control provision in October 2008. However, the error was not brought to the trial court's attention until approximately a decade later, and it was the State—not Mr. Bates—that ultimately alerted the trial court to the problem. While Mr. Bates may contend that he did not know about the defect until that time, the relevant question is when a duly diligent person would have discovered the factual predicate, not when Mr. Bates himself actually learned of it. *See DiCenzi*, 452 F.3d at 470. Mr. Bates bears the burden of proof on that issue, *see Stokes*, 36 F. App'x at 804, but has failed to offer any evidence showing that a duly diligent person could not have discovered the defective sentencing entry in the decade before the State brought it to the trial court's attention. Thus, even assuming the Ohio Supreme Court's decision was the factual predicate for Mr. Bates' claim, he did not exercise due diligence in discovering that factual predicate and cannot rely on a later start date of the statute of limitations under § 2244(d)(1)(D). I

---

[5] The Sixth Circuit later called into question *Shorter*'s holding that a petitioner must act diligently in seeking to obtain a state court order where the petitioner argues that the state court order itself was unconstitutional. *See Sexton v. Wainwright*, 968 F.3d 607, 612-13 (6th Cir. 2020) (holding that denial of opportunity to file delayed appeal "was a fresh constitutional violation—if it was a violation at all" and thus that denial began statute of limitations with respect to that claim). But that holding has no bearing here. Mr. Bates is not arguing that the Ohio Supreme Court's decision was unconstitutional. Instead, he argues that the 2008 imposition of post-release control was unconstitutional, and that the Ohio Supreme Court's decision merely revealed that fact.

19

therefore conclude that the statute of limitations began running on October 31, 2019, the day after Mr. Bates' deadline to file a direct appeal to the Eighth Appellate District expired. Mr. Bates' petition is therefore untimely unless some form of tolling applies.

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application for state post-conviction or other collateral review is pending. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)). Mr. Bates filed several postconviction petitions, including a petition to set aside his conviction, a motion to withdraw his guilty pleas, and a motion for leave to file a delayed appeal. (ECF No. 10-1, Exhibits 10, 20, 41). However, statutory tolling under § 2244(d)(2) "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quotation omitted). Mr. Bates did not file the first of his postconviction petitions, his motion to vacate his convictions, until August 9, 2022, well after the statute of limitations expired on October 30, 2020. (ECF No. 10-1, Exhibit 10). Mr. Bates cannot rely on statutory tolling to save his claims.

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir.

20

2010) (citing *Holland*, 560 U.S. at 649); *Keeling*, 673 F.3d at 462. "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling*, 673 F.3d at 462 (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

Mr. Bates appears to argue that he is entitled to equitable tolling in light of the COVID-19 pandemic. However, a petitioner is entitled to equitable tolling in light of the COVID-19 pandemic only if the petitioner has "been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19." *United States v. West*, 578 F. Supp. 3d 962, 966 (N.D. Ohio Jan. 5, 2022) (Lioi, J.). Mr. Bates has not shown that he was pursuing his rights diligently or that he would have filed a timely petition absent the pandemic. Nor has he provided any other basis on which to equitably toll the statute of limitations. Accordingly, Mr. Bates is not entitled to equitable tolling, and I recommend that the Court dismiss his petition as time-barred. In an abundance of caution, however, I will proceed to evaluate the parties' remaining arguments as well.

## B. Procedural Default

The Warden next argues that Mr. Bates procedurally defaulted on all of his claims because he did not present them at all levels of the state court review process while state court avenues remained open to him. I agree.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not fairly presented to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (cleaned up). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id*. at

21

751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

Mr. Bates first raised his claims in his August 2022 petition to set aside his judgment of conviction. (ECF No. 10-1, Exhibit 10). However, after the trial court denied Mr. Bates' petition, he did not file an appeal to the Eighth Appellate District, and thus did not fairly present his claim at all levels at the state court review process. *Nian*, 228 F.3d at 681.[6]

Mr. Bates next raised his claims in his May 2023 motion to withdraw his guilty plea. (ECF No. 10-1, Exhibit 20). After the trial court denied his motion, Mr. Bates filed an appeal to the Eighth Appellate District. (ECF No. 10-1, Exhibit 28). However, Mr. Bates did not appeal to the Ohio Supreme Court after the Eighth Appellate District affirmed the trial court's ruling. Mr. Bates thus again failed to fairly present his claims through his motion to withdraw his guilty plea.

Mr. Bates raised his claims for a third time in his October 2024 motion for leave to take a delayed direct appeal, which he did pursue at all levels of the state court review process. (ECF No. 10-1, Exhibits 41, 49-50). However, the Eighth Appellate District summarily denied Mr. Bates' motion, and the Ohio Supreme Court declined to accept jurisdiction without explanation. (ECF No. 10-1, Exhibits 46, 51).

It is well-settled that the Ohio courts' denial of a motion for leave to take a delayed appeal constitutes an independent and adequate state ground that precludes habeas review under *Maupin. See Prieto v. Schweitzer*, 4:18CV00222, 2019 WL 2605639, at *6 (N.D. Ohio May 31, 2019) ("The Court finds Prieto's failure to timely appeal to the Supreme Court of

---

[6] In his traverse, Mr. Bates argues that he is not in procedural default because the clerk never served him with a copy of the trial court's January 25, 2023 order denying his petition to vacate his sentence. However, the Warden notes that, on October 23, 2023, Mr. Bates filed a "motion for proper notice" asking the trial court to provide him with a file-stamped copy of the court's ruling. (ECF No. 12). Despite his awareness of the ruling, there is no indication that Mr. Bates ever attempted to file an appeal.

Ohio, in conjunction with that court's denial of his Motion for Delayed Appeal, resulted in procedural default.") (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)), *report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Davenport v. Fender*, No. 1:20-CV-0561, 2023 WL 1785492, at *13 (N.D. Ohio Jan. 5, 2023) (holding that Ohio Supreme Court's denial of motion for leave to file delayed appeal constituted adequate and independent state ground under *Maupin* and resulted in procedural default), *report and recommendation adopted*, 2023 WL 1782121 (N.D. Ohio Feb. 6, 2023). The fact that the Eighth Appellate District and the Ohio Supreme Court issued their rulings without explaining their reasoning does not change that result. *See Mitchell v. Kelly*, No. 1:11 CV 2744, 2012 WL 274701, at *3 (N.D. Ohio Jan. 31, 2012) (holding that state court implicitly enforced state procedural rule when it summarily denied petitioner's motion for leave to file a delayed appeal); *Green v. Clipper*, No. 5:13-cv-02029, 2015 WL 3505001, at *11 (N.D. Ohio June 3, 2015) (same) (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.) (per curiam)). Mr. Bates has therefore procedurally defaulted on his claims.[7]

Mr. Bates' procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. He again argues that he has demonstrated cause to excuse his procedural default in light of the COVID-19 pandemic, which he says prevented him from complying with filing deadlines. It is true that "[s]ome courts have found sufficient cause to excuse default when petitioners, who diligently pursued their rights, faced filing delays and limited access to law libraries due to the COVID-19 pandemic." *Black v.*

---

[7] Mr. Bates argues that he has not procedurally defaulted on his claims because he could still seek leave to take a delayed appeal. As the Warden correctly responds, however, Mr. Bates already made unsuccessful attempts to take a delayed appeal in both the Eighth Appellate District and the Ohio Supreme Court.

*Warden, Pickaway Corr. Inst.*, No. 2:22-cv-3087, 2023 WL 8811032, at *19 (S.D. Ohio Dec. 20, 2023), *report and recommendation adopted*, 2024 WL 1735073 (S.D. Ohio Apr. 23, 2024). However, "[t]o satisfy cause to excuse procedural default, a petitioner must offer, with specificity, how the COVID-19 pandemic and any related restrictions hindered his ability to timely-file in state court." *Id*. Here, Mr. Bates offers only conclusory assertions that the pandemic prevented him from complying with Ohio's timeliness requirements. Accordingly, he has not met his burden of showing that the COVID-19 pandemic excuses his procedural default.

Mr. Bates also argues that his procedural default should be excused because he is actually innocent of the charges against him. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). That standard "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Schlup*, 513 U.S. at 327 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

Mr. Bates argues that newly-discovered evidence shows that he is actually innocent of the offenses. In particular, he asserts that GPS data shows that he was not at the scene of the crime, but rather was located across the street. Even assuming that this evidence is newly-discovered for purposes of Mr. Bates' petition, he has not shown that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt in light of that evidence. While GPS data showing Mr. Bates somewhere other than at the scene could undermine the evidence of Mr. Bates' guilt, a reasonable juror could also conclude that GPS

data placing Mr. Bates near the scene of the crime is corroborative of his guilt, not exculpatory. Mr. Bates has not demonstrated that this is an extraordinary case that would qualify for the actual innocence exception. I therefore alternatively recommend that the Court dismiss Mr. Bates' petition because he has procedurally defaulted on all of his claims.

**C.  Merits**

### 1.  Grounds One and Two: Illegal Search

In his first two grounds for relief, Mr. Bates asserts that his Fourth and Fourteenth Amendment rights were violated because the charges against him arose from an illegal, warrantless search premised on Mr. Bates' post-release control restrictions, which the Ohio Supreme Court later held were invalid. The Warden argues both that Mr. Bates waived his claims by entering into an unconditional guilty plea and that his claims are not cognizable in habeas. I agree with the Warden on both arguments.

#### a.  Wavier Through Guilty Plea

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction." *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted). That is because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Therefore, "after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012).

"Courts applying the *Tollett* standard have consistently held that federal habeas claims

25

challenging the validity of pre-plea search warrants are barred following the entry of a guilty plea." *Flores v. Turner*, No. 3:19-CV-02608, 2023 WL 4746323, at *11 (N.D. Ohio Jan. 13, 2023) (citing cases), *report and recommendation adopted*, 2023 WL 4744277 (N.D. Ohio July 25, 2023); *see also Kendrick v. Warden, Lebanon Corr. Inst*., No. 3:09-cv-166, 2011 WL 6960960, at *5 (S.D. Ohio Nov. 16, 2011) ("a claim that evidence has been unconstitutionally gathered is exactly the kind of claim that is regularly waived by a plea of guilty"), *report and recommendation adopted*, 2012 WL 423764 (S.D. Ohio Feb. 9, 2012). Because he entered an unconditional guilty plea, Mr. Bates cannot now challenge the validity of the search of his residence, and I recommend that the Court dismiss his first two grounds for relief.

### b. *Cognizability*

Even if Mr. Bates had not waived his right to challenge the search, his claims would fail because they are not cognizable in habeas. In *Stone v. Powell*, the Supreme Court held that, given the "nature and purpose" of the Fourth Amendment exclusionary rule, habeas review is generally unavailable to petitioners who asset that evidence obtained through an unconstitutional search and seizure was introduced at trial. 428 U.S. 465, 481-82 (1976). Thus, a habeas petitioner may not pursue a Fourth Amendment claim "if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

To determine whether *Powell* bars a petitioner's Fourth Amendment claim, a court conducts a two-step review process. First, the court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). Second, the court "must determine whether presentation of the claim was in fact frustrated because of a failure of that

mechanism." *Id*.

Mr. Bates does not argue that Ohio's procedures, in the abstract, fail to provide criminal defendants with an opportunity to raise a Fourth Amendment claim, and the Sixth Circuit has held that Ohio's procedures are "clearly adequate." *Riley*, 674 F.2d at 526. Nor does he argue that the State failed to give him the opportunity to raise a Fourth Amendment claim in his particular case. Because Mr. Bates had an opportunity to raise his Fourth Amendment claim during the trial court proceedings, I alternatively recommend that the Court dismiss Mr. Bates' first and second grounds for relief as non-cognizable.

### 2.  *Ground Three: Ineffective Assistance of Trial Counsel*

In his third and final ground for relief, Mr. Bates asserts that he received the ineffective assistance of trial counsel because his counsel failed to adequately investigate whether Mr. Bates was subject to an illegal search and failed to file a motion to suppress evidence obtained from that search.

As with his first two grounds for relief, Mr. Bates waived his right to pursue claims for pre-plea ineffective assistance of counsel by entering an unconditional guilty plea. *See Acosta v. Palmer*, No. 3:24-CV-00201-JJH, 2025 WL 1222641, at *12 (N.D. Ohio Apr. 28, 2025) (noting that the Sixth Circuit has applied *Tollett* "to reject pre-plea claims of ineffective assistance of counsel that do not attack the voluntary or intelligent nature of the plea"), *report and recommendation adopted*, 2025 WL 3012772 (N.D. Ohio Oct. 28, 2025); *Armstrong v. Wainwright*, No. 1:18CV1133, 2018 WL 8050904, at *17 (N.D. Ohio Dec. 20, 2018) (holding that guilty plea waived ineffective assistance claims unrelated to voluntariness of plea), *report and recommendation adopted*, 2019 WL 1670994 (N.D. Ohio Apr. 17, 2019); *Brown v. McConahay*, No. 1:23-cv-753, 2023 WL 9556586, at *12 (N.D. Ohio Dec. 18, 2023) (same), *report and recommendation adopted*, 2024 WL 177116 (N.D. Ohio Jan. 17, 2024). Thus, to

the extent that Mr. Bates bases his claim on actions predating the plea—including his counsel's failure to investigate or to file a motion to suppress—he has waived his claim.

Mr. Bates also argues that his plea was not knowing and voluntary because his counsel failed to properly advise him of his right to challenge the purportedly-illegal search. "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The validity of the plea must be determined from the "totality of the circumstances." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. 747). The petitioner must overcome a heavy burden if a federal habeas court is to overturn a state court finding that he made a knowing and voluntary plea. *Parke v. Raley*, 506 U.S. 20 (1992); *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir.1989).

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The right to effective assistance of counsel "extends to all critical stages of a criminal proceeding," including the plea bargain phase. *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).

Under the first prong of *Strickland*, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. For prejudice,

28

the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

When a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

> *Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

In holding that Mr. Bates did not receive the ineffective assistance of counsel, the Eighth Appellate District reasoned as follows:

> {¶ 44} Contrary to Bates' assertions, *Bates* did not hold that the imposition of PRC on Bates in 501710 was "unconstitutional," was "void," that Bates was "not on PRC," that "the trial court did not have jurisdiction to sentence [Bates] for PRC," that the trial court did not, in fact, impose postrelease control as part of his sentence in 501710

29

or that the APA lacked the power to supervise Bates at the time of the charges (or search) at issue here.

{¶ 45} The *Bates* Court held that "[b]ecause res judicata precluded the collateral attack on Bates's sentence, the *trial court's 2018 sentencing entry* was improper and, therefore, of no effect." (Emphasis added.) *Id*. at ¶ 25, 32. "[A]ccordingly," the Court "reverse[d] the Eighth District's decision to the extent it holds otherwise" and "vacate[d] the portion of the 2018 sentencing entry imposing postrelease control on Bates." *Id*. at ¶ 32. It is not at all clear from a reading of Bates what effect its holding had on the validity of the APA's postrelease control supervision of Bates in 501710 and any related search of his residence.

{¶ 46} Because no transcripts were included in the record forwarded to this court on appeal, we do not know what information was provided, or what was said, at the change-of-plea hearing that led the trial court to accept Bates' guilty pleas as having been knowingly, intelligently and voluntarily entered. Likewise, there is no information in the record — other than Bates' general, conclusory assertion — regarding what evidence existed to support the charges against Bates or the source of that evidence, including whether any "warrantless" search was conducted that led to the recovery of evidence used to support the charges against Bates, the basis upon which any such search was conducted and whether any evidence recovered would have been inadmissible if the search was deemed invalid.

21{¶ 47} Further, even assuming that Bates was subject to a "warrantless" search, even assuming that some or all of the evidence that supported the charges against Bates was obtained as a result of that search, even assuming Bates was not subject to postrelease control in 501710 and even assuming that the only basis upon which the search could have been lawfully conducted (and the evidence obtained from that search used to convict Bates) was the fact that Bates was on postrelease control, we cannot say that (1) Bates was denied the effective assistance of counsel based on counsel's "failure to investigate" and/or failure to advise Bates that his postrelease control in 501710 was "void" and file a motion to suppress the evidence obtained from the search of his residence or (2) the trial court abused its discretion in denying Bates' postsentence motion to withdraw his guilty pleas.

{¶ 48} At the time Bates entered his guilty pleas in this case in July 2019, it was still the law of this State that "a trial court's failure to validly impose postrelease control rendered the postrelease control portion of the sentence void and subject to correction at any time before the offender's release from prison" — as the trial court did in 2018 in 501710. *See Bates*, 2022-Ohio-475, at ¶ 12, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085. Bates acknowledges this, but asserts that, even though the 2018 sentencing in 501710 predated the Ohio Supreme Court's decisions in *Harper*, *Hudson* and *Bates*, "nothing prevented [his] counsel from making the arguments presented in those cases that would eventually apply to [him]."

{¶ 49} However, trial counsel has no duty to perform a futile act, including filing a motion to suppress evidence that is not supported by existing law. As this court explained in *In re L.S.*, 2021-Ohio-3353, ¶ 35 (8th Dist.):

> The failure to file a motion to suppress is not per se ineffective assistance of counsel. *See, e.g., State v. Musleh*, 2017-Ohio-8166, ¶ 31 (8th Dist.); *State v. Watts*, 2016-Ohio-8318, ¶ 17 (8th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). Rather, a trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if there is a reasonable probability that, had the motion to suppress been filed, it would have been granted and that suppression of the challenged evidence would have affected the outcome of the case. *See, e.g., State v. Frierson*, 2018-Ohio-391, ¶ 17 (8th Dist.); *Musleh* at ¶ 31. Counsel is not required to file a motion to suppress if doing so would be a futile act. *See, e.g., Musleh* at ¶ 31; *State v. Armstrong*, 2016-Ohio-2627, ¶ 30 (8th Dist.); *State v. Moon*, 2015-Ohio-1550, ¶ 28 (8th Dist.) ("'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.'"), quoting *State v. Suarez*, 2015-Ohio-64, ¶ 13 (12th Dist.); *State v. Brooks*, 2013-Ohio-58, ¶ 57 (11th Dist.) ("'If case law indicates the motion would not have been granted, then counsel cannot be considered ineffective for failing to prosecute it.'"), quoting *State v. Gaines*, 2007-Ohio-1375, ¶ 17 (11th Dist.); *State v. Grimes*, 2011-Ohio-4406, ¶ 30 (8th Dist.) ("[W]here there is no basis for the suppression of evidence, defense counsel has no duty to pursue a motion to suppress evidence ... and where the claim of ineffective assistance is premised upon the failure to file a baseless motion to suppress, such claim must fail."), citing *State v. Gibson*, 69 Ohio App.2d 91, 95 (8th Dist. 1980).

*See also State v. White*, 2022-Ohio-2182, ¶ 11 (12th Dist.)

{¶ 50} Likewise, "[t]rial counsel cannot be ineffective for failing to predict and argue future changes in the law." *State v. Driffin*, 2022-Ohio-804, ¶ 9 (8th Dist.), citing *State v. Lucic*, 2009-Ohio-5686, ¶ 5 (8th Dist.); *see also State v. Johnson*, 2024-Ohio-1163, ¶ 32 (8th Dist.). Accordingly, Bates' counsel had (1) no duty to anticipate, at the time Bates entered his guilty pleas, that the Ohio Supreme Court would issue *Harper*, 2020-Ohio-2913, and *Hudson*, 2020-Ohio-3849, and, based on that authority, vacate the postrelease control portion of the 2018 sentencing entry in 501710 in *Bates*, 2022-Ohio-475, (2) no duty to inform Bates of that possibility and (3) no duty to file a motion to suppress, based on such a possibility, that could not have had any reasonable expectation of success unless the law had changed.

(ECF No. 10-1, Exhibit 32).

Applying the double layer of deference under AEDPA, the Eighth Appellate District's

holding was not contrary to or an unreasonable application of clearly established federal law.

31

Rather, the Eighth Appellate District reasonably concluded that Mr. Bates had misinterpreted the Ohio Supreme Court's decision and that the Ohio Supreme Court had not declared his post-release control unconstitutional. The Eighth Appellate District also reasonably held that trial counsel's performance was adequate in light of then-existing state law, which permitted a trial court to correct an entry imposing post-release control, and which would have rendered futile counsel's argument. While subsequent developments in the law show that arguments regarding Mr. Bates' post-release control may not have been futile, I cannot say that the Eighth Appellate District acted contrary to or unreasonably applied clearly established law. And, because Mr. Bates cannot show that his counsel's performance was deficient, his argument that ineffective assistance of counsel rendered his plea unknowing and involuntary likewise fails. I therefore alternatively recommend that the Court deny Mr. Bates' third ground for relief on the merits.

## VI. MR. BATES' MOTIONS

Finally, Mr. Bates has filed several motions in connection with his petition, including: (1) a motion for judicial notice (ECF No. 8); (2) a motion for discovery (ECF No. 9); and (3) a motion to expand the record (ECF No. 16). I will address each in turn.

### A.  Motion for Judicial Notice

Mr. Bates first asks the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of certain filings and alleged from the state court record relevant to his argument that the trial court's imposition of post-release control was void. (ECF No. 8). The Warden has not opposed Mr. Bates' motion, and a court may take judicial notice of state court records. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004); *Mills v. May*, No. 5:24-cv-00680, 2025 WL 1207547, at *25 n.4 (N.D. Ohio Apr. 25, 2025), *report and recommendation adopted*, 2025 WL 1634870 (N.D. Ohio June 9, 2025). Mr. Bates' motion for judicial notice

is granted to the extent Mr. Bates asks me to take judicial notice of the underlying state court records.

**B.** **Motion for Discovery**

Mr. Bates next asks the Court to permit discovery, arguing that there are documents in the possession of the Cuyahoga County prosecutor that he has never seen because they were labeled "counsel only."

Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides that a court may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure. *See* Rules Governing § 2254 Cases R. 6(a). A petitioner seeking discovery must provide reasons for the request and must also "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rules Governing § 2254 Cases R. 6(b).

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, "[b]efore determining whether discovery is warranted, the Court must identify the essential elements of the claim on which discovery is sought" and determine whether the requested discovery will develop facts that will enable the petitioner to show he is entitled to habeas relief. *Newton v. Turner*, No. 1:20-cv-2799, 2024 WL 1853042, at *3 (N.D. Ohio Apr. 29, 2024) (citing *Bracy*, 520 U.S. at 908-09). "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Mr. Bates has not shown that discovery is warranted here. As discussed above, his claims are both time-barred and procedurally defaulted, and he thus cannot show good cause for discovery regarding them. *See Obermiller v. Shoop*, No. 1:19 CV 2193, 2024 WL 404490,

at \*5 (N.D. Ohio Feb. 2, 2024). In addition, Mr. Bates has not identified any particular material information that he believes is in the State's possession. Instead, he says only that he "do[es] not know if exculpatory evidence existed at the time . . . ." (ECF No. 9, PageID # 87). Mr. Bates' motion for discovery is therefore DENIED.

### C.  Motion to Expand the Record

Finally, Mr. Bates seeks leave to expand the record with a declaration from his mother, Tabatha Jackson. (ECF No. 16). Ms. Jackson avers that she was present when the search of Mr. Bates' residence occurred and that officers told her they were conducting the search without a warrant because Mr. Bates' parole officer had authorized the search. (ECF No. 16-1, ¶¶ 3-4). Ms. Jackson also avers that she spoke to Mr. Bates' attorney after learning that his post-release control was void and that Mr. Bates' attorney erroneously told her that he could not file a motion to suppress. *Id*. at ¶¶ 5-6.

Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that, if a petition is not dismissed, the court may direct the parties to expand the record by submitting additional materials. As discussed above, I recommend that the Court dismiss Mr. Bates' claims as time-barred and procedurally defaulted, and his motion to expand the record is therefore moot. Mr. Bates' motion to expand the record is denied.

## VII. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Bates has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VIII. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY

Mr. Bates' petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1). I also

recommend that the Court not grant him a certificate of appealability. In addition, Mr. Bates'

Motion for Judicial Notice (ECF No. 8) is GRANTED. Mr. Bates' Motion for Discovery

(ECF No. 9), Motion to Strike Sur-Reply (ECF No. 14), and Motion to Expand the Record

(ECF No. 16) are DENIED.

Dated:  February 27, 2026                    *Jennifer Dowdell Armstrong*
                                             Jennifer Dowdell Armstrong
                                             U.S. Magistrate Judge


### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

36

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).